135 N.J. Super. 347 (1975)
343 A.2d 465
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
QUINCY H. LUCARELLO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1975.
Decided June 12, 1975.
*348 Before Judges MICHELS, MORGAN and MILMED.
Mr. Thomas P. Ford, Jr., argued the cause for the appellant (Messrs. Citrino, Balsam & Ford, attorneys).
Mr. Steven E. Rosenfeld, Assistant Prosecutor, argued the cause for the respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
*349 PER CURIAM.
The Law Division, by order, relieved Thomas P. Ford, Jr., as counsel for defendant Quincy H. Lucarello, Commissioner of Public Safety and Director of the Police and Fire Departments of the City of Orange, "because of conflict of interest due to his former position as an Assistant Prosecutor of Essex County and First Assistant Prosecutor of Essex County during the period between September of 1959 and September of 1971." Defendant applied for leave to appeal from that order. We granted such leave and accelerated the appeal. See R. 2:5-6, R. 2:9-2.
The pertinent facts may be briefly summarized. Ford joined the Essex County Prosecutor's Office as an assistant prosecutor on September 14, 1959. On May 2, 1966 he was appointed first assistant prosecutor of the county and served in that capacity until September 3, 1971 when he became a partner in the law firm of Citrino, Carella, Balsam & Ford, now Citrino, Balsam & Ford. In August 1965 an investigation was undertaken by the Essex County Prosecutor's Office regarding possible criminal activity within the Police Department of the City of Orange. The investigation is still continuing.
According to the prosecutor's office a primary source of information throughout the investigation has been Rocco Zarillo, Director of Information and Complaints for the City of Orange, who continuously reported regarding police improprieties in Orange. It is his testimony which forms in substantial part the basis for the present indictments against defendant charging defendant with (1) false swearing before the Essex County grand jury on December 3, 6 and 13, 1974 (Indictment No. 1994-74); (2) conspiracy to obstruct justice from on or about May 28, 1974 through on or about July 9, 1974, obstructing justice and malfeasance in office (Indictment No. 1995-74), and (3) conspiracy, between on or about September 26, 1974 through on or about March 24, 1975, to obstruct justice by endeavoring to persuade Rocco Zarillo to *350 testify falsely before the grand jury, obstructing justice and attempted subornation of false swearing (Indictment No. 1996-74).
At the hearing in the Law Division the trial judge asked counsel whether he recalled, during the time he was assistant prosecutor or first assistant prosecutor, interrogating Rocco Zarillo. Ford answered: "I may have talked to him." At the hearing assistant prosecutors informed the court that Rocco Zarillo had played certain tape recordings for the prosecutor's office; that Ford was present at the interrogation of Zarillo during the playing of the recordings; that one recording, made in 1969, called the "Split the Pie" tape recording, referred "to certain Orange police officers allegedly on the pad to certain gamblers in the City of Orange"; that this tape recording was played for Ford when he was employed in the prosecutor's office, and that this recording "is a part" of the indictment for false swearing returned against the defendant Quincy H. Lucarello. This latter reference obviously is to that part of one of the indictments which alleges that defendant testified falsely before the grand jury when he denied, among other things, that he knew of the tape or that he discussed its contents with Rocco Zarillo, or that he knew that any potential grand jury witnesses intended to testify in an untruthful manner about the tape. When asked by the trial judge whether he recalled listening to tapes in 1970, as the prosecutor alleged, Ford answered: "I don't, but I will, for the purposes of this record, I will say that there may have been tapes I heard."
It is clear from the record before us that two of the pending indictments (Nos. 1996-74 and 1994-74) against defendant, in substantial part charge him with (among other things) attempting to keep from the grand jury evidence of alleged criminality involving the Orange Police Department uncovered by the prosecutor's office during Ford's tenure there in an investigation in which he took part as first assistant *351 prosecutor.[1] Ford's continued representation of defendant would, accordingly, be in direct violation of Disciplinary Rule 9-101(B), which reads as follows:
A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
Cf. N.J.S.A. 52:13D-17.
As pointed out by the court in In re Biederman, 63 N.J. 396 (1973):
The ethical requirement that an attorney who has been a public employee may not, upon retirement, act on behalf of a private client in any matter upon which he was engaged in the public interest is neither new, ambiguous nor difficult to understand. In Formal Opinion 134 of the American Bar Association (1935) it was held that an attorney formerly employed by a state's attorney's office might not, after retiring to private practice, either defend cases that originated while he was connected with that office or defend persons against whom he had aided in procuring indictments. In N.J. Advisory Committee on Professional Ethics, Opinion 207, 99 [sic[2]] N.J.L.J. 451 (1971) the same result was reached upon substantially identical facts, even though the attorney had played no part in the investigation and prosecution which had taken place while he was an assistant county prosecutor. [at 399-400]
*352 In the N.J. Advisory Committee on Professional Ethics, Opinion 207, 94 N.J.L.J. 451 (1971), reference was made to the very similarly, although less precisely, phrased predecessor rule to DR 9-101(B) which appeared as part of former Canon 36 of the Canons of Professional Ethics, and which provided that:
A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ.
The Advisory Committee on Professional Ethics, in Opinion No. 207, quotes the following from Opinion 134 (1935) of the Committee on Professional Ethics of the American Bar Association:
A lawyer retiring from public employ cannot utilize or seem to utilize the fruits of the former professional relationships in subsequent private practice involving a matter investigated or passed upon either by himself or others of the public legal staff during the time he was identified with it.
And, N.J. Advisory Committee on Professional Ethics, Opinion 111, 90 N.J.L.J. 361 (1967), points out in part that:
The American Bar Association, Committee on Professional Ethics, Opinion 134 (1935), interprets Canon 36 and extends the prohibition [therein] to any matter which originated in the office with which the attorney was connected where he was in a position of confidence and actually knew or had the opportunity to know facts because of his position in said office.
We find no merit in Ford's suggestion that there is no conflict of interest or appearance of a conflict inasmuch as the dates of the specific charges in the pending indictments are long after he left the prosecutor's office. While the indictments against defendant charge him with acts occurring after Ford left the prosecutor's office, much of the information *353 relevant to the crimes charged in two of the indictments was gathered while Ford was first assistant prosecutor. The crimes charged in these two indictments involve, in substantial part, alleged manipulation or cover-up of the previously gathered evidence. Having had a part in the investigation of alleged criminal activity in the Orange Police Department while first assistant prosecutor, Ford is disqualified at any time from representing a defendant charged with attempting to keep from the grand jury evidence of such alleged criminal activity.[3] Public confidence in the bar can demand no less.
Defendant, of course, is entitled to retain qualified counsel of his own choice. He has no right, however, to demand to be represented by an attorney disqualified because of an ethical requirement. And, we point out, his remaining choice is not a narrow one. There are many well qualified attorneys who are not affected by the disqualification which is the subject matter of this appeal.
The order of the Law Division under review is affirmed.
MORGAN, J.A.D. (dissenting).
I dissent from the opinion of my colleagues because of one essential and uncontroverted fact. The offenses with which Lucarello is charged with committing occurred approximately three years after Ford resigned from his position as Essex County Assistant Prosecutor. Ford could not therefore have been with the prosecutor's office at the time these offenses were the subject of the investigation because they had not yet occurred. One can only investigate a past event, not a future one.
*354 Ford was retained by Lucarello to defend against charges contained in three multi-count indictments returned in April 1975. The first indictment, No. 1996-74, charges Lucarello with having attempted, between September 26, 1974 and March 24, 1975, to suborn perjured testimony by one Rocco Zarillo in connection with a criminal investigation "then pending" before a grand jury of Essex County, and conspiring with others, named in the same indictment, to suborn Zarillo's perjured testimony before the grand jury during that same period of time. The essential facts constituting the offenses charged in separate counts of this indictment are alleged therein as being that defendant and the codefendants, during the several months period referred to above, "unlawfully, unjustly and corruptly solicited, incited, enticed and endeavored to persuade the said Rocco Zarillo to testify falsely in the said investigation before the Grand Jury * * *." These solicitations, enticements and the like allegedly took place between September 26, 1974 and March 24, 1975, almost three years after Ford left office.[1] I am at a loss to discern how Ford's tenure with the Essex County Prosecutor's Office which terminated three years before commission of the alleged offense could possibly confer on Ford or his client any possible advantage not enjoyed by counsel not so previously employed.
Lucarello has entered a plea of not guilty to all counts of this indictment. Presumably, he will be denying that he singly, or in conspiracy with others, solicited, enticed or attempted to persuade Zarillo to perjure himself before the grand jury. Zarillo may well testify that Lucarello did commit these acts. At any rate, a credibility issue will be presented *355 concerning whose testimony is to be believed. Nothing in the briefs submitted to this court, or during oral argument, or in the hearings conducted before the trial court, even remotely suggests that Ford may have obtained knowledge during his tenure with the prosecutor's office which would permit him to more successfully defend against these charges based upon offenses committed long after he ceased being an assistant prosecutor.
The State concedes (the majority do not address the point) that Ford's representation of Lucarello with respect to the second indictment, No. 1995-74 (in seven counts some of which are not applicable to Lucarello), does not implicate him in any conflict of interest arising from his previous tenure as assistant prosecutor so as to require his disqualification, because the conduct charged therein as criminal arose long after Ford ceased to be an assistant prosecutor and no investigation pertaining to those charges could have been conducted by the prosecutor's office during Ford's term of service. Why should Ford be qualified with respect to the charges in Indictment 1995-74 and disqualified with respect to indictment 1996-74, when the charges in both were with respect to conduct occurring long after Ford left office. Surely the fact that Ford may have known Zarillo, the person whose perjured testimony was allegedly sought by Lucarello in 1974-75, cannot be the basis for disqualification. The fact that a lawyer knows or even has dealt with a witness (in other than a lawyer-client relationship not here pertinent), by itself, is no basis for disqualification under any rule of ethics with which I am acquainted.
The third indictment, No. 1994-74, charges Lucarello alone, in three counts, with having given false testimony on or about December 3, 6 and 13, 1974 before the grand jury in connection with a criminal investigation "then" pending. Here, too, the criminal conduct charged to Lucarello occurred long after Ford left the office of assistant prosecutor, and his former office could not have been investigating this matter at the time he served because it had not yet occurred. The *356 majority's concern, and the opinion which reflects it, stems from the fact that the false testimony allegedly given by Lucarello concerned his knowledge of the existence and contents of a tape recording, made during 1970, in which Rocco Zarillo participated  the so-called "split-the-pie" tape. This tape came into existence while Ford was an assistant prosecutor, and although he doesn't recall, he is willing to have this court assume, arguendo, that he had actual knowledge of its existence and its contents. Accordingly, these facts are not disputed. It must be stressed, however, that this tape did not implicate Lucarello in anything. He was not mentioned therein. Indeed, he could not have been since he was not even elected at the time to the office in which he had to be in order to commit the offense with which he is being charged in these three indictments. (He was elected police commissioner in May or June of 1974). Moreover, Lucarello is not being charged with testifying at variance to the facts related in the tape. Rather the charge is that he misrepresented, under oath, the extent of his knowledge concerning the existence of the tape and knowingly misrepresented to the grand jury, under oath, the contents thereof. The existence of the tape, however, and its contents, are no secret. The tape is discoverable and, in fact, has already been discovered by several of the codefendants in this series of indictments. Moreover, with respect to the charges contained in this indictment (No. 1994-74), it will be an essential item of proof in the State's case against Lucarello and will have to be disclosed during trial. The truth or falsity of the matters referred to therein is not at issue with respect to these charges. The only issue concerns whether Lucarello lied when he minimized his knowledge of the existence of the tape or, for example, when he referred to it as being unintelligible (when it is contended it was intelligible) or when he described or knowingly misdescribed its contents. The tape is an immutable fact; it says what it says, and no one, not even Ford, can change it.
*357 Accordingly, I fail to see how the fact that the tape came into existence during Ford's tenure as assistant prosecutor, and that he had knowledge of its existence and contents during that period of time, can be the basis for a disqualification. Such knowledge would have to be shared by any other counsel retained to defend Lucarello with respect to these charges. He would have to acquaint himself with the contents of the tape. The fact that Ford is assumed to already have this knowledge cannot therefore be the basis for any conflict on his part and consequent disqualification.
The simple fact is that Lucarello wants Ford to represent him. Ford accepted the retainer and, interestingly, acted pursuant to this retainer in representing Lucarello, while Lucarello testified (falsely according to indictment No. 1994-74) before the grand jury with respect to these tapes of which Ford presumably had knowledge, the very conduct which gave rise to these charges. Lucarello should be held entitled to be represented by counsel of his choice unless chosen counsel is clearly disqualified, for ethical considerations, from representing him. The right to counsel of one's choice is inherent in the constitutional right to counsel afforded one accused of crime in state prosecutions by the Fourteenth Amendment to the United States Constitution. Crooker v. California, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448, 1454 (1958); United States ex rel. Ferenc v. Brierley, 320 F. Supp. 406, 408 (E.D. Pa. 1970); Lee v. United States, 98 U.S. App. D.C. 272, 235 F.2d 219, 221 (1956). It is a right of great magnitude and should not be compromised on the basis of some ephemeral and visceral adverse reaction to a particular retainer. Unless there exists some real basis for disqualification, on recognized and justifiable ethical ground, this important right should be held inviolate.
Ethics Opinion 207 is inapplicable. It holds that a former assistant prosecutor is disqualified from representing an accused who was indicted "as a result" of an investigation being conducted by the prosecutor's office while the former assistant *358 prosecutor held office.[2] (In the case presented, the retainer was being considered only two months after he left office). In this case there can be no dispute but that Lucarello was not indicted "as a result" of an investigation conducted while Ford was assistant prosecutor. The offense with which Lucarello is charged occurred almost three years later and therefore could not have been under investigation at the time. In re Biederman, 63 N.J. 396 (1973), a case of egregious conflict of interest on the part of the attorney therein involved, is clearly inapplicable to the present case.
What are the considerations underlying the court's opinion? Clearly, they do not concern the interests of the accused who is resisting the action taken by the majority. Presumably the court's primary concern is with possible prejudice to the State. But the State has not even claimed that it would be prejudiced by Ford's continued participation in the case. It has certainly failed to point out how it would be prejudiced, and the court's opinion is no more informative. Ford is apparently being disqualified for a "conflict of interest." But nowhere in the majority opinion is the "conflict" identified. I perceive none. Surely Ford would not be expected to be interested in convicting his own client or in protecting Rocco Zarillo with whom he had no previous relationship.
It appears that the majority's fundamental concern is with the court's image in the "public" mind. But what are the dark suspicions which the majority fear the "public" will harbor concerning the integrity of this prosecution? Surely the public will not suspect a failure of the State to vigorously press the prosecution because of Ford's presence in the case *359 when the prosecution went to the trouble of securing the multiple indictments against Lucarello after being aware that Ford was representing him. How could the public suspect leniency of the prosecutor in Ford's favor when the prosecution has so vigorously sought his ouster? Indeed, if the State is as vigorous in its prosecution of Lucarello as it has been in its efforts to disqualify his attorney, public confidence in the sufficiency of the prosecution will be fully vindicated. Although the court's concern with the image of justice is commendable (I share it), its opinion nowhere describes how Ford's participation will or could result in tarnishing it.
For these reasons I fail to see how Ford's representation of Lucarello is "conduct that is prejudicial to the administration of Justice." DR1-102. He did not have "substantial responsibility" in the matter now pending while he was a public employee because, as previously noted, the "matter" had not even come into existence at that time. DR9-101(B). The consequences of a generalized public distrust of governmental functions so much an unfortunate element in our current life should not be visited upon Lucarello.
I doubt whether public confidence in the integrity of our judicial procedures can be maintained (or restored) by disqualifying attorneys for an unethical conflict of interest where none exists or can exist, with the result of depriving a criminal accused of the services of an attorney in whom he reposes confidence.
The relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously. [In re Mandell, 69 F.2d 830, 831 (2d Cir.1934)]
Unfounded suspicions of ethical infractions by the public should not be given the effect of interfering with an accused's fundamental constitutional right to counsel of one's own choice. Public confidence can never be based on so flimsy a foundation.
NOTES
[1] E.g., that between on or about November 1, 1974 through on or about November 14, 1974 defendant and others named with him (1) "did attempt willfully to cause, procure and suborn willful false swearing by soliciting, instigating and endeavoring to persuade Rocco C. Zarillo to be and appear as a witness before the said Grand Jury and upon the same investigation to falsely swear and give false evidence," and (2) "did willfully and knowingly solicit and endeavor to persuade Rocco C. Zarillo, a Grand Jury witness, to withhold, burn, destroy and prevent the said Grand Jury from hearing certain tape recordings of a potential criminal nature against certain police officers of the City of Orange."

That on or about December 6, 1974 he swore falsely before the grand jury when he denied that he knew that any potential grand jury witnesses intended to testify in an untruthful manner about the so-called "split-the-pie" tape, in that he "did have knowledge that potential Grand Jury witnesses intended to testify about the so-called `split-the-pie' tape in an untruthful manner before the said Grand Jury."
[2] 94
[3] By separate opinion filed today we have also sustained the disqualification, on separate grounds, of Allen C. Marra, a former assistant prosecutor, an associate in the law firm of Citrino, Balsam & Ford, (a) as attorney for Gaetano Jaquindo and Salvatore Rizzo, charged in two indictments as coconspirators with defendant Quincy H. Lucarello, and (b) as attorney for Felix Jaquindo. See State v. Jaquindo, Rizzo and Jaquindo, Docket Nos. A-2975-74, A-2976-74 and A-2977-74.
[1] The court's opinion characterizes the net effect of the charges against Lucarello as "attempting to keep from the grand jury evidence of alleged criminality involving the Orange Police Department uncovered by the prosecutor's office during Ford's tenure there in an investigation in which he took part as first assistant prosecutor." I do not concur in this characterization. The charges against Lucarello are as reflected in the indictments in which he is named as defendant.
[2] It did not hold, as it easily could have, that the former assistant prosecutor was disqualified, for a stated period of time, from representing an accused in the county in which he served as such. Although much could be said in support of such a rule, it has never, to my knowledge, been adopted.