138 N.J. Super. 62 (1975)
350 A.2d 252
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GAETANO JAQUINDO, SALVATORE RIZZO AND FELIX JAQUINDO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1975.
Decided June 12, 1975.
*63 Before Judges MICHELS, MORGAN and MILMED.
Mr. Allen C. Marra argued the cause for the appellants (Messrs. Citrino, Balsam & Ford, attorneys).
Mr. Steven E. Rosenfeld, Assistant Prosecutor, argued the cause for the respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
PER CURIAM.
The Law Division, by separate orders, relieved Allen C. Marra as counsel for the defendants Gaetano Jaquindo, Salvatore Rizzo and Felix Jaquindo "because of conflict of interest due to his former position as an Assistant Prosecutor of Essex County during the period between September of 1970 to April, 1973." Defendants applied for *64 leave to appeal from the orders. We granted such leave and accelerated the appeals. See R. 2:5-6, R. 2:9-2.
The pertinent facts may be briefly summarized. Marra joined the Essex County Prosecutor's Office as an assistant prosecutor on September 28, 1970. He served in that capacity until April 23, 1973. In August 1965 an investigation was undertaken by the Essex County Prosecutor's Office regarding possible criminal activity within the Police Department of the City of Orange. The investigation is still continuing.
According to the prosecutor's office a primary source of information throughout the investigation has been Rocco Zarillo, Director of Information and Complaints for the City of Orange, who continuously reported regarding police improprieties in Orange. It is his testimony which forms in substantial part the basis for (1) pending indictments against defendants, Gaetano Jaquindo, Captain in the Orange Police Department, and Salvatore Rizzo, Sergeant in the Police Department, charging them with (a) conspiracy to obstruct justice from on or about May 28, 1974 through on or about July 9, 1974, obstructing justice and malfeasance in office (Indictment No. 1995-74), and (b) conspiracy, between on or about September 26, 1974 through on or about March 24, 1975, to obstruct justice by endeavoring to persuade Rocco Zarillo to testify falsely before the grand jury, obstructing justice and attempted subornation of false swearing (Indictment No. 1996-74); (2) additional pending indictments against defendant Gaetano Jaquindo charging him with (a) conspiracy, between on or about January 1, 1971 through on or about February 1, 1971, to commit extortion, extortion and malfeasance in office (Indictment No. 2010-74); and (b) conspiracy, between on or about October 27, 1970 through on or about November 3, 1970, to commit extortion, extortion and malfeasance in office (Indictment No. 2011-74), and (3) an additional pending indictment against defendant Salvatore Rizzo charging him with malfeasance in office (Indictment *65 No. 2003-74). There is a separate indictment against defendant Felix Jaquindo charging him with voting fraud on or about May 14, 1974 (Indictment No. 1992-74). At the hearing in the Law Division in a related matter,[1] assistant prosecutors informed the court that Rocco Zarillo had played certain tape recordings for the prosecutor's office; that one of Marra's present associates in the practice of law, Thomas P. Ford, Jr., then first assistant prosecutor, was present at the interrogation of Zarillo during the playing of the recordings; that one recording made in 1969, called the "Split the Pie" tape recording, referred "to certain Orange police officers allegedly on the pad to certain gamblers in the City of Orange," and that this tape recording was played for Ford in 1970.
It is clear from the record before us that one of the pending indictments (No. 1996-74) against defendants Jaquindo and Rizzo, charges them, in substantial part, with (among other things) attempting to keep from the grand jury evidence of alleged criminality involving the Orange Police Department uncovered by the prosecutor's office during Marra's and Ford's tenure there in an investigation in which Ford took part as first assistant prosecutor.[2] Mr. Marra's continued representation of these defendants as well as his associate's (Ford's) continued representation of codefendant Lucarello would, accordingly, be in direct violation *66 of Disciplinary Rule 9-101(B), which reads as follows:
A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
Cf. N.J.S.A. 52:13D-17.
As pointed out by the court in In re Biederman, 63 N.J. 396 (1973):
The ethical requirement that an attorney who has been a public employee may not, upon retirement, act on behalf of a private client in any matter upon which he was engaged in the public interest is neither new, ambiguous nor difficult to understand. In Formal Opinion 134 of the American Bar Association (1935) it was held that an attorney formerly employed by a state's attorney's office might not, after retiring to private practice, either defend cases that originated while he was connected with that office or defend persons against whom he had aided in procuring indictments. In N.J. Advisory Committee on Professional Ethics, Opinion 207, 99 [sic -94] N.J.L.J. 451 (1971) the same result was reached upon substantially identical facts, even though the attorney had played no part in the investigation and prosecution which had taken place while he was an assistant county prosecutor. [at 399-400]
In the N.J. Advisory Committee on Professional Ethics' Opinion 207, 94 N.J.L.J. 451 (1971), reference was made to the very similarly, although less precisely, phrased predecessor rule to DR 9-101(B) which appeared as part of former Canon 36 of the Canons of Professional Ethics, and which provided that:
A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ.
The Advisory Committee on Professional Ethics, in Opinion No. 207, quotes the following from Opinion 134 (1935) of the Committee on Professional Ethics of the American Bar Association:
*67 A lawyer retiring from public employ cannot utilize or seem to utilize the fruits of the former professional relationships in subsequent private practice involving a matter investigated or passed upon either by himself or others of the public legal staff during the time he was identified with it.
And, N.J. Advisory Committee on Professional Ethics' Opinion 111, 90 N.J.L.J. 361 (1967), points out in part that:
The American Bar Association, Committee on Professional Ethics, Opinion 134 (1935), interprets Canon 36 and extends the prohibition [therein] to any matter which originated in the office with which the attorney was connected where he was in a position of confidence and actually knew or had the opportunity to know facts because of his position in said office. [Emphasis supplied].
We find no merit in Marra's suggestion that there is no conflict of interest or appearance of a conflict since some of the dates of the specific charges in the pending indictments are long after he left the prosecutor's office. While some of the charges against the defendants Jaquindo and Rizzo allege acts occurring after Marra left the prosecutor's office, much of the information relevant to the crimes charged was gathered while Marra was assistant prosecutor. The crimes charged in one of the indictments involve, in substantial part, alleged manipulation or cover-up of the previously gathered evidence. Having served as an assistant prosecutor during the pendency of the investigation into alleged criminal activity in the Orange Police Department, Marra is disqualified at any time from representing a defendant charged with attempting to keep from the grand jury evidence of such alleged criminal activity,[3] or charged in any indictment resulting from such investigation. Public confidence in the bar can demand no less.
Defendants, of course, are entitled to retain qualified counsel of their own choice. They have no right, *68 however, to demand to be represented by an attorney disqualified because of an ethical requirement. And, we point out, the remaining choice of each is not a narrow one. There are many well qualified attorneys who are not affected by the disqualification which is the subject matter of this appeal.
The orders of the Law Division under review are affirmed.
MORGAN, J.A.D. (concurring and dissenting in part).
I join my colleagues in affirming that portion of the order entered by the trial judge disqualifying Marra from representing his clients with respect to those indictments charging offenses which were committed during the period of time in which he acted as assistant prosecutor, irrespective as to whether formal proof established that the investigation being conducted by the prosecutor's office at that time uncovered evidence of his clients' criminality which later became the subject of the indictments in question. Formal proof of the connection, if any, between the investigation and the later indictments would require the trial judge to conduct plenary trial involving disclosure of the course the investigation took, when and how the evidence of criminality was obtained, and which evidence was pertinent to which indictment. Adducing this proof would involve the trial judge in a formidable task of considerable magnitude which would only serve to determine whether or not counsel could properly continue representing his clients, and would in no way bear on the prime question with which the trial judge should be concerned  guilt or innocence of defendants charged with crime. Further, such a procedure would be tantamount to trying the case in advance. In my view such a procedure would be both unseemly and inappropriate where on the face of the matter doubt arises as to the ethical propriety of a particular retainer. Hence, whether or not, in point of fact, the investigation uncovered evidence suggestive of Marra's clients' criminal behavior during Marra's tenure of office, which later became the occasion for the *69 later indictments, Marra should have disqualified himself from representing these clients because of the very suspicion that such facts would engender without the necessity of proof that such state of facts did exist.
Undoubtedly, disqualification of counsel for ethical considerations in the absence of formal proof and findings based thereon may work a hardship in a particular case to both the attorney and the clients who wish to retain him. On the other hand, the business of the trial courts is to provide the facilities for the determination of questions of guilt or innocence, not to determine the ethical propriety of a particular retainer. Where a legitimate doubt arises as to whether an attorney can, consistent with ethical consideration, represent a particular client, a doubt which can only be finally resolved in an extensive plenary trial, such counsel, sensitive to both the necessity for public confidence in the integrity of our judicial processes and the need of overburdened trial courts to proceed to the essential business of determining guilt or innocence, should step aside and permit other counsel, about whom there exists no ethical problem, real or potential, to proceed with the essential problem to be resolved at trial. Attorneys are officers of the court and are required to be sensitive to matters affecting public confidence in our judicial procedures. Yielding in the face of legitimate suspicion as to ethics of a retainer is the appropriate response to the need for such sensitivity.
The client, represented by such an attorney, can legitimately expect no more than his attorney. If the attorney, due to legitimate suspicion engendered by the facts of a case, is ethically required to reject the retainer, the client, although entitled to counsel of his choice, cannot insist on formal proof of facts requiring disqualification.
Consistent with the view expressed in the companion case of State v. Lucarello, 135 N.J. Super. 347, filed today, I must, however, register my dissent as to the opinion of the majority concerning Marra's disqualification with respect to the indictments charging his clients with crimes committed *70 a substantial period of time after he ceased being assistant prosecutor. Clearly, with respect to such offenses, there can be no doubt but that any investigation in the prosecutor's office at the time Marra held office could not have been concerned with offenses not yet committed.
At this early juncture of the proceedings in these cases we cannot know which indictments will be tried together and which will be tried separately. If one or more of the indictments are tried together, and Marra is disqualified to act as attorney with respect to anyone of them, he should be disqualified from participating as counsel with respect to all such indictments. If, however, a trial concerns only an indictment charging an offense on which Marra is not disqualified, I see no impediment to his participation in such a trial.
NOTES
[1] See our opinion filed today in a companion case, State v. Lucarello, 135 N.J. Super. 347.
[2] E.g., that between November 1, 1974 and November 14, 1974 defendants and others named with them (1) "did attempt willfully to cause, procure and suborn willful false swearing by soliciting, instigating and endeavoring to persuade Rocco C. Zarillo to be and appear as a witness before the said Grand Jury and upon the same investigation to falsely swear and give false evidence," and (2) "did willfully and knowingly solicit and endeavor to persuade Rocco C. Zarillo, a Grand Jury witness, to withhold, burn, destroy and prevent the said Grand Jury from hearing certain tape recordings of a potential criminal nature against certain police officers of the City of Orange."
[3] See also, our opinion filed today in a companion case, State v. Uricoli, Docket No. A-2978-74.