STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RICHARD L. RECHTSCHAFFER, DEFENDANT-APPELLANT.

Argued December 2, 1975—Decided June 14, 1976.

Mr. *Stephen S. Weinstein* argued the cause for appellant.

Mr. *Richard J. Engelhardt,* Deputy Attorney General, argued the cause for respondent (Mr. *William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SCHREIBER, J. The defendant Richard L. Rechtschaffer was indicted on two counts, (1) possession of more than 25 grams of marihuana in violation of *N. J. S. A.* 24:21-20 a(3) and (2) possession of marihuana with intent to distribute contrary to *N. J. S. A.* 24:21-19 a(1). During the trial, the court declared a mistrial of the second count, and the proceedings continued. The jury found the defendant guilty of possession. After the defendant's motion for dismissal of the second count on the ground of double jeopardy was denied, he was found guilty of possession with an intent to distribute at a second trial.

The defendant appealed from the denial of his motion for dismissal and the judgment of conviction on the second count. The Appellate Division affirmed the judgment but vacated the earlier possession conviction, holding that it had merged into the conviction of possession with distributive

intent. We granted the defendant's petition for certification. 68 *N. J.* 144 (1975).

The facts adduced by the State at both trials were substantially the same, and the pertinent facts may be summarized as follows: The defendant, a student at Fairleigh Dickinson University, lived in a dormitory on the campus. He and five fellow students occupied a suite which contained a living room, bathroom and three bedrooms. Two narcotics investigators from the Morris County prosecutor's office, John Dempsey and Thomas Jennings, had been operating as undercover agents at the University. On November 6, 1972 they visited the defendant in his suite. Dempsey attempted to purchase some marihuana from the defendant, who explained that the marihuana which he had on hand was unusable because it was wet and green. However, he offered to obtain and sell Dempsey an ounce of marihuana for $20. Dempsey agreed and the defendant left the apartment presumably to acquire the marihuana.

During defendant's absence, Florham Park police officers and Morris County investigators armed with a search warrant entered the apartment and placed all the occupants, including the undercover agents, under arrest. Shortly thereafter the defendant returned to the apartment and he too was placed under arrest. He gave the police 20 grams of marihuana which he had on his person and disclosed 118 grams packaged in bags located in a parka which was hanging in his clothes closet and contained in a tin in his bedroom. The defendant, three roommates, Dempsey and Jennings were then incarcerated in the Florham Park Police Department jail.

At the initial trial, part of defendant's cross-examination of Dempsey was directed to what transpired after the arrest.

Q. * * * Let's take November 6, 1972. Did you talk to the defendant on that day?
A. Yes, sir. I did.
Q. Other than the conversations you told us about here today?
A. After he was arrested—

Q. After he was arrested?
A. Yes, I talked to him.
Q. Did he seem upset to you?
A. Yes, sir.
Q. Very upset, isn't that a fact?
A. I don't know how upset. He, you know—
Q. He said certain things to you and you, in turn, said things to him, isn't that correct?
A. Yes, we had a conversation.
Q. All right. In fact, would you say he was kind of antagonistic to you?
A. At that time, no.
Q. Later, some subsequent time?
A. On the 6th?
MR. WEINSTEIN: Any time thereafter.
MR. PARMIGIANI: Your Honor, I would ask him to be more specific. It's very difficult to answer.
THE COURT: Of course, You were at the 6th. If you are changing that date, tell him.
MR. WEINSTEIN: This question is as to the 6th.
THE WITNESS: He wasn't antagonistic toward me.

On redirect examination the following question was asked and answer given with respect to the conversation between Dempsey and the defendant after the arrest on November 6, 1972:

Q. Did Mr. Rechtschaffer ever make any comment as to what he would do if he found out the person who informed on him?
A. Yes, sir. He did. He advised that if he found out who the individual was that informed on him he would take his hunting knife and kill him.

The defendant moved for a mistrial on both counts because of this "highly prejudicial statement." The trial court agreed the statement was prejudicial but rationalized that since defense counsel had admitted defendant's possession of more than 25 grams of marihuana in his opening statement, the defendant would not be prejudiced by continuing the trial on the first count (possession). Therefore the court declared a mistrial, over the objections of both the defendant and the prosecutor, only with respect to the second count which charged possession with intent to distribute.

The prosecutor pointed out that "that would constitute double jeopardy as to the trial of the Second Count." The court replied: "Of course it will. Of course. * * * I think double jeopardy may be here but that is not for me to decide. The State may be confronted with double jeopardy subsequently when you move this; if you move it but you can proceed * * * I will grant it as to the Second Count, only and you can proceed on the First Count."

When asked if he wanted to proceed with the trial, defense counsel replied in the negative. The court then directed him to "go ahead" and the trial proceeded. The defendant did not take the stand and produced no evidence.[1] No distinction was made by the prosecutor in summation or the trial court in its charge between the 118 grams of marihuana in the parka and tin can and the 20 grams on the defendant's person. The jury found the defendant guilty of possession of more than 25 grams of marihuana, which may have included the 20 grams found on his person.

The defendant moved for dismissal of the second count on the ground of double jeopardy. The trial court in a letter opinion denied the motion. It found that the prosecutor had acted in good faith and stated that "[t]he exclusive motivation behind the declaration of the mistrial was the concern for protecting defendant's interests, and therefore the doctrine of double jeopardy does not apply."

The defendant was thereafter tried on the intent to distribute count. As previously indicated the prosecution produced substantially the same evidence as it had at the first trial. However, now the defendant testified in his own behalf. He admitted possession of the marihuana in his

---

[1]At the close of the State's case the defendant again moved on the same grounds for a mistrial of the entire case. His apparent concurrence at that time with the trial court's having granted a mistrial on the second count simply expressed satisfaction that the court was moving in the proper direction, but he continued to press for a mistrial of the entire case and complained about the position in which the trial court's action had placed him.

parka and on his person, but claimed that none of the marihuana was for sale and that it was entirely for his personal use. He became suspicious when Dempsey sought to purchase some marihuana and, wanting some time to think about the situation, as a ruse he suggested that he had to leave the apartment to obtain the goods. He took a short walk and upon his return encountered the police. The defendant claimed that at all times the 20 grams of marihuana which he surrendered to the police had been on his person and for his own use. He flatly denied that he sold or intended to sell any of the marihuana.

As noted above the 20 grams found on his person may have been found by the jury to justify the possession conviction and the same 20 grams constituted the marihuana upon which the conviction of possession with intent to distribute was predicated. It follows, as the Appellate Division held, that the same evidence "was used to support both convictions."

The Appellate Division held that the mistrial granted *sua sponte* by the court did not preclude the later trial on double jeopardy grounds. It agreed with the trial court that the prosecutor acted in good faith, that Dempsey's answer resulted in prejudice which "far outweighed" its probative value, and that the exclusive motive of the trial court was to protect the defendant. The Appellate Division analogized the proceedings to one where there is an indictment with two charges and the jury convicts on one but cannot agree on the other. In that situation double jeopardy is no bar to retrial on the second charge. Although it disclaimed approval of the partial mistrial procedure, the Appellate Division implicitly sanctioned its use but merged the conviction of possession into the conviction for possession with intent to distribute. It vacated the conviction and sentence on possession and affirmed that on the possession with intent to distribute.

The defendant's primary thrust on appeal is that the partial mistrial was improperly granted by the court *sua*

*sponte* and that the possession conviction necessarily barred on double jeopardy grounds a second trial for possession with an intent to distribute the same marihuana whose possession had led to his first conviction.

There are language differences in the double jeopardy provisions in the Federal and State Constitutions. Article I, par. 11 of the New Jersey Constitution provides that:

No person shall, after acquittal, be tried for the same offense.

The Fifth Amendment of the Federal Constitution states:

\* \* \* nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; \* \* \*

Although the Fifth Amendment is facially broader, the state and federal clauses have been held coextensive in application. *State v. Kleinwaks*, 68 *N. J.* 328 (1975); *State v. Farmer*, 48 *N. J.* 145, 168 (1966), *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967); *State v. Williams*, 30 *N. J.* 105, 122 (1959). Furthermore, the proscription in the Fifth Amendment is applicable to the states by virtue of the Fourteenth Amendment, *Benton v. Maryland*, 395 *U. S.* 784, 89 *S. Ct.* 2056, 23 *L. Ed.* 2d 707 (1969), and accordingly the more restrictive proscription of the Federal Constitution is binding upon us as a matter of minimum protection. It is therefore appropriate that we consider the double jeopardy issue in the light of the federal cases.

It is basic that a defendant is entitled to have a trial proceed to its normal conclusion. Subsumed in this constitutional protection is the policy to be protected from the harassment of successive prosecutions, *Downum v. United States*, 372 *U. S.* 734, 83 *S. Ct.* 1033, 10 *L. Ed.* 2d 100 (1963), and to receive only one punishment for an offense. Generally speaking, a defendant is deemed subjected to jeopardy after a jury is impaneled and sworn. *State v. Locklear*, 16 *N. J.* 232, 235, 243 (1954). That

being so, the constitutional interdiction against being placed twice *in jeopardy* for the same offense would literally bar any subsequent trial in the absence of the defendant's consent. Such an unconscionable result was put to rest in *United States v. Perez,* 22 *U. S.* (9 Wheat.) 579, 6 *L. Ed.* 165 (1824), where the trial court had discharged a jury after it was unable to agree on a verdict. The defendant sought to prevent his retrial on double jeopardy grounds. Mr. Justice Story, in rejecting the defendant's contention, wrote:

> * * * We are of opinion that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, *there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office. [22 *U. S.* (9 Wheat.) at 580; emphasis supplied].

"Manifest necessity" and "the ends of public justice" are concepts whose definitive outlines depend upon the singular facts and circumstances of each case. *State v. Farmer, supra,* 48 *N. J.* at 177 (1966). Existence of these two criteria depends upon balancing two prime factors: Public interest in seeing that there is a fair trial designed to end in a just and equitable judgment, and the constitutional protection to which the defendant is entitled that he shall not be harassed by subjection to two trials and two punishments for essentially the same offense. *See Wade*

*v. Hunter,* 336 *U. S.* 684, 689, 69 *S. Ct.* 834, 93 *L. Ed.* 974, 978 (1949).

The underlying hypothesis in the *Perez* rule is that the trial once started should proceed to its conclusion. Unavoidable necessity obviously justifies aborting the proceedings. Incapacity of a juror or the judge, or inability of a jury to agree upon a verdict fall into this category. *State v. Romeo,* 43 *N. J.* 188 (1964), *cert.* den. 379 *U. S.* 970, 85 *S. Ct.* 668; 13 *L. Ed.* 2d 563 (1965), *State v. Roller,* 29 *N. J.* 339 (1959); Note, "Double Jeopardy: The Reprosecution Problem," 77 *Harv. L. Rev.* 1272, 1277 (1964). Where the motion for the mistrial emanates from the prosecutor or the defendant because of impropriety committed by one or the other, a mistrial may be appropriate. The ends of public justice both for the defendant and the state require a fair trial, but whether a second trial is permissible may depend on the character of the impropriety. *United States v. Dinitz,* —— *U. S.* ——, 96 *S. Ct.* 1075, 47 *L. Ed.* 2d 267 (1976). It is well settled that if prosecutorial misbehavior or manipulation causes the mistrial, the defendant should not be subjected to the harassment of a second trial. Comment, "Twice in Jeopardy," 75 *Yale L. J.* 262, 286 (1965); *State v. Locklear, supra,* 16 *N. J.* at 236–237. Where, as in this case, the trial court acts *sua sponte,* over the objections of both parties, propriety of the mistrial depends upon the sound exercise of the court's discretion, to be utilized "only in those situations which would otherwise result in manifest injustice." *State v. DiRienzo,* 53 *N. J.* 360, 383 (1969); *United States v. Dinitz, supra.*

Unquestionably a trial court has a discretionary range within which it may properly operate to grant a mistrial whether on its own motion or otherwise. *Gori v. United States,* 367 *U. S.* 364, 81 *S. Ct.* 1523, 6 *L. Ed.* 2d 901 (1961); *Illinois v. Somerville,* 410 *U. S.* 458, 93 *S. Ct.* 1066, 35 *L. Ed.* 2d 425 (1973). But there are limits.

In *Downum v. United States, supra,* after a jury was selected and sworn, the prosecutor moved that the jury be

discharged because a key witness essential to two of six counts was unavailable. The defendant's request that the first two counts be dismissed and that the trial proceed on the remaining four was denied and the jury was discharged. The defendant was later tried and convicted on all six counts. The Supreme Court, in a 5-4 decision, held that the second trial should not have been held because no "imperious necessity" had compelled postponement and mistrial. 372 *U. S.* at 736, 83 *S. Ct.* 1033. Mr. Justice Clark writing for the dissenters emphasized that a mistrial was appropriate when the circumstances manifested such a necessity and when failure to discontinue the trial would have defeated the ends of justice. But he opined that the defendant had not suffered any deprivation of rights and that to acquit him without a trial on the merits would constitute a defeat of the "ends of public justice." *Id.* at 743, 83 *S. Ct.* 1033.

Some eight years later the Supreme Court reconsidered the guidelines of the trial court's outer discretionary limits in *United States v. Jorn,* 400 *U. S.* 470, 91 *S. Ct.* 547, 27 *L. Ed.* 2d 543 (1971). The defendant had been indicted for willfully assisting in the preparation of fraudulent federal income tax returns. At the trial, the Government produced five taxpayers whom the defendant had allegedly assisted in preparation of these returns. The trial judge *sua sponte* declared a mistrial so that the witnesses might consult with their attorneys because of the possibility that they might make self-incriminating admissions while testifying. A second trial was held precluded on the ground of double jeopardy. The Supreme Court affirmed. Mr. Justice Harlan, in writing for a plurality of the Court, after commenting that the trial court's initiative had been to protect the witnesses and not the defendant, held that the correctitude of the mistrial should not depend on the "motivation underlying the trial judge's action." *Id.* at 483, 91 *S. Ct.* at 556. He asserted that "the Perez doctrine of manifest necessity stands as a command to trial judges not

to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Id.* at 485, 91 *S. Ct.* at 557. He concluded that the trial court did not exercise a sound discretion to assure that "there was a manifest necessity for the *sua sponte* declaration of this mistrial." *Id.* at 487, 91 *S. Ct.* at 558; (emphasis added). Mr. Justice Stewart, following the logic of the dissenters in *Downum,* wrote on behalf of the three dissenters, that:

\* \* \* The real question is whether there has been an "abuse" of the trial process resulting in prejudice to the accused, by way of harassment or the like, such as to outweigh society's interest in the punishment of crime. [400 *U. S.* at 492, 91 S. Ct. at 560].

He concluded that the mistrial "could not possibly have injured the defendant" and that the trial court had not abused its discretion. *Id.* at 493, 91 *S. Ct.* at 561.

In *Illinois v. Somerville, supra,* the defendant had been indicted for theft under Illinois law. A mistrial on the State's motion and over the defendant's objection was granted because the indictment was fatally defective and could not be amended. The Supreme Court rejected an attack on the second trial and conviction because the defect in the indictment could not be corrected by amendment and the "ends of public justice" dictated a fair trial designed to end in completion in a just judgment which could only be accomplished by the declaration of a mistrial of the proceeding, a new indictment and a second trial. However, Mr. Justice Rehnquist, writing for the Court, pointed out:

The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one. *United States v. Jorn, supra.* Nor will the lack of demonstrable additional prejudice preclude the defendant's invocation of the double jeopardy bar in

the absence of some important countervailing interest of proper judicial administration. [410 *U. S.* at 471, 93 *S. Ct.* at 1073].[2]

The dissenting opinions of Mr. Justice White and Mr. Justice Marshall emphasized that the defendant's right to a completed trial transcends the interest of the state. They rationalized that the trial court had an alternative — continuance of the trial to a conclusion. Since the defendant may have been acquitted and the error was the result of the State's negligence, a proper balancing necessitated application of the double jeopardy clause.

In *United States v. Dinitz, supra,* the trial judge excluded defendant's trial counsel from the trial. The court advised co-counsel of three choices: (1) a stay pending application to the Court of Appeals to review the propriety of the ouster, (2) continuation of the trial with existing counsel, or (3) a mistrial. Defendant moved for a mistrial and the motion was granted. Defendant subsequently moved to dismiss the indictment on the ground that a retrial would contravene the double jeopardy clause of the Constitution. The motion was denied. The Court of Appeals reversed by a vote of 8-7. Upon review, the Supreme Court reinstated the District Court order.

Mr. Justice Stewart, writing for the majority, distinguished between mistrials declared by a court on its own motion and those granted at the defendant's request. There must be a manifest necessity where the court acts *sua sponte.* However when a defendant moves because of some judicial or prosecutional error, it is his choice either to run the risk of a conviction, followed by appeal, reversal and a second trial

---

[2]For a discussion of the comparative and dissonant elements in the United States Supreme Court cases, see Note, "Mistrial and Double Jeopardy," 49 *N. Y. U. L. Rev.* 937 (1974); Comment, "Double Jeopardy and Government Appeals of Criminal Dismissals," 52 *Texas L. Rev.* 303 (1974); and Note, "Illinois v. Somerville: An Encroachment on the Double Jeopardy Protection," 27 *Sw. L. J.* 535 (1973).

or abort the proceedings and commence a new trial. If the defendant's motion has been triggered by prosecutorial misconduct or "bad-faith" conduct by the judge, then a second trial is foreclosed. Mr. Justice Brennan dissented because the trial judge's position effectually removed the "consensual character" of the motion. In that posture he reasoned a retrial was foreclosed because no manifest necessity justified the mistrial. It is important to note that both the majority and dissenting opinions agree that where the court on its own motion grants a mistrial, manifest necessity for that action must be shown. Further the majority seems to impliedly concede that if the trial court had granted the mistrial *sua sponte,* manifest necessity and the ends of public justice would not have justified that action and double jeopardy principles would have barred a second trial.[3]

The common threads that run through the Supreme Court cases are centered about the propriety of the trial court's granting *sua sponte* the mistrial and its cause. Did the trial court properly exercise its discretion so that a mistrial was justified? Did it have a viable alternative? If justified, what circumstances created the situation? Was it due to prosecutorial or defense misconduct? Will a second trial accord with the ends of public justice and with proper

---

[3]The proposed New Jersey Code of Criminal Justice, Assembly Bill 3282 (1975), provides that prosecution is barred when a former prosecution has been improperly terminated. Section 2C:1–9d. It states that:

Termination under any of the following circumstances is not improper:

(1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.

(2) The trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed.

(3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.

judicial administration? Will the defendant be prejudiced by a second trial, and if so, to what extent? *See State v. Hudson,* 139 *N. J. Super.* 360 (App. Div. 1976).

An assessment of all the pertinent factors in the instant case leads only to the conclusion that neither manifest necessity nor the ends of public justice warranted the grant of the partial mistrial. Not only was the defendant prejudiced thereby, but the dual trial conflicted with proper judicial administration.

Preliminarily we observe that neither the prosecutor nor the defense counsel concurred in the trial court's action. The defendant had sought a mistrial on both counts and he objected strenuously to granting a mistrial on only one count. It was only at the trial court's express direction that he proceeded on the possession count. Further, no one questions the good faith of the prosecutor in posing the question eliciting the threat by the defendant, the answer to which led to the mistrial. No prosecutorial manipulation or misbehavior is charged.

In both trials the State proceeded on the theory that at Dempsey's solicitation the defendant agreed to sell him some marihuana. Dempsey explained that the defendant "knew where he could obtain some marihuana which he would sell me for twenty dollars an ounce." The defendant then left to procure the marihuana. According to Dempsey, the defendant returned in approximately 10 minutes, when he was placed under arrest and surrendered some 20 grams which were on his person. It was the State's position that the defendant acquired this marihuana during that trip. Under these circumstances where the defendant had a specific intent to sell the marihuana when he obtained its possession, we are satisfied, as was the Appellate Division, that the possession was inseparable from possession of the same marihuana with intent to distribute it. *State v. Davis,* 68 *N. J.* 69 (1975); *State v. Wilkinson,* 126 *N. J. Super.* 553, 556 (App. Div.), certif. den. 63 *N. J.* 562 (1973); *State v. Fari-*

*ello,* 133 *N. J. Super.* 114, 120 (App. Div.), certif. granted 68 *N. J.* 164 (1975); *State v. Ruiz,* 127 *N. J. Super.* 350, 353-354 (App. Div. 1974), aff'd on other grounds 68 *N. J.* 54 (1975).

Undoubtedly, if Rechtschaffer had been indicted, tried and found guilty of possession, that conviction would have barred a second trial for possession with intent to distribute the same marihuana.[4] As was observed in *State v. Wolf,* 46 *N. J.* 301 (1966):

> It has long been the law of this State that where a lesser offense is a necessary ingredient or component part of the principal or greater offense and emanates from the same transaction, then conviction or acquittal of the lesser bars further prosecution for the greater crime. *State v. Dixon,* 40 *N. J.* 180 (1963); *State v. Williams, supra; State v. Mark,* 23 *N. J.* 162 (1957); *State v. Labato,* 7 *N. J.* 137 (1951). [*Id.* at 303].

Since possession was an indispensable element of the possession with intent to distribute in this case, the trial court should have granted a mistrial of both counts, if warranted at all. Otherwise, the defendant would be subjected to a second trial which embodies the same offense for which he has already been tried and found guilty.[5] Even in the absence of a constitutional bar, we have made it clear that a defendant is not to be subjected to separate trials for offenses arising out of the same criminal incident. *State v. Gregory,*

---

[4] Section 2C:1-9a of the proposed New Jersey Code of Criminal Justice, Assembly Bill 3282 (1975), provides that a prosecution is barred where there has been a finding of guilty of a lesser included offense.

[5] The Appellate Division's analogy to a trial where a jury convicts on one count and is hung on the second count is inapposite, [*United States v. Scott,* 464 *F.* 2d 832 (D. C. Cir. 1972); *Forsberg v. United States,* 351 *F.* 2d 242 (9th Cir. 1965), *cert.* den. 383 *U. S.* 950, 86 *S. Ct.* 1209, 16 *L. Ed.* 2d 212 (1966)], for in that situation the need for a new trial is due to the unavoidable necessity for an adjudication — a factor conspicuous by its absence here.

66 *N. J.* 510 (1975). A mistrial of one count only which is inextricably intertwined with the second would frustrate that policy. See the mandatory joinder of offenses provided for in sections 1.07(2) and 1.07(3) of the American Law Institute's *Model Penal Code* (Proposed Official Draft 1962) which this Court adopted in *State v. Gregory, supra* at 522, and section 2C:1-8 of the proposed New Jersey Code of Criminal Justice, *supra.*

We are also satisfied that the prosecutor's question was appropriate and proper. The defendant on cross-examination of Dempsey, the undercover agent, had opened up the subject of a conversation which Dempsey had with the defendant after the arrest on November 6, 1972. The prosecutor on redirect examination pursued this subject matter by directing the witness to the defendant's comments in that conversation. The redirect was well within the scope of the defendant's cross. *See* 6 *Wigmore, Evidence* (3 ed. 1940), § 1896 at 567.

Furthermore, the defendant's response that if he discovered the identity of his informer he would kill him was admissible. *See Evid. R.* 63(10) ; *State v. Thompson,* 59 *N. J.* 396, 408-409 (1971) ; *State v. Kennedy,* 135 *N. J. Super.* 513, 518-525 (App. Div. 1975). Declarations subsequent to the commission of the crime which indicate consciousness of guilt, or are inconsistent with innocence or tend to establish intent are relevant and admissible. *State v. Allen,* 53 *N. J.* 250 (1969). Although the remarks may also be interpreted as merely having expressed dismay at being unjustifiably incarcerated, they are consonant with an inference of an admission of guilt. It was properly the jury's function to determine the appropriate inference and the weight to be given to it. Further the probative value of defendant's answer was not substantially outweighed by the risk that its admission would create substantial danger of undue prejudice. *Evid. R.* 4. The comment contains the very factors which establish admissibility. *Cf. State v. Kuske,*

109 *N. J. Super.* 575 (App. Div.), certif. den. 56 *N. J.* 246 (1970), where Judge Conford in upholding the admissibility of letters written by the defendant wrote:

Since the letters were admissible, the fact that they were "inflammatory" is inconsequential. The excerpts from the letters described as inflammatory are the very factors which establish the documents as competent admissions by the defendant. [*Id.* at 588].

Threats to, accompanied by gestures at, a particular person, which would appear to be more prejudicial to a defendant since they constitute an assault as distinguished from the expression here, have been held properly evidential. In *State v. Hill,* 47 *N. J.* 490 (1966) this Court sanctioned admissibility of a defendant's threat to prevent a state witness from testifying. ("I already killed one and would kill another.") The Court wrote:

* * * The State claimed that the statement was relevant and admissible as probative of a consciousness of guilt. The defendant countered that the statement was equally probative of consciousness of innocence and that it was therefore inadmissible. The defendant further claimed that the highly prejudicial nature of the statement made it inadmissible.

The weight of authority supports the State's contention that threats made to a witness with the intent to induce him to stay away from a trial or not to appear to testify against the accused are admissible in evidence under a theory that any conduct of the accused inconsistent with his claim of innocence is admissible in evidence. [*Id.* at 500].

*See generally,* Annotation, "Evidence as to threats made to keep witnesses away from criminal trial," 62 *A. L. R.* 136 (1929). Examples of admissibility may be found in the following: *United States v. Howard,* 228 *F. Supp.* 939, 942 (D. Neb. 1964) (defendant's act of procuring the murder of or murdering the chief witness against him); *People v. Jaquette,* 253 *Cal. App.* 2d 38, 61 *Cal. Rptr.* 209, 215 (Ct. App. 1967) (defendant's threat to prosecutrix); *State v. Saiz,* 104 *Ariz.* 407, 454 *P.* 2d 152 (1969) (defendant in

narcotics case beat up his cell-mate informer); *State v. Valenzuela,* 109 *Ariz.* 1, 503 *P.* 2d 949, 950 (1972) (threats against a jointly incarcerated co-defendant); *State v. Mason,* 394 *S. W.* 2d 343, 344 (Mo. Sup. Ct. 1965) (defendant's threat to "get" state's witness); *People v. Bloom,* 370 *Ill.* 144, 18 *N. E.* 2d 197, 199 (1938) ("[A]ny attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence."); *Curtis v. State,* 44 *Ala. App.* 63, 64, 202 *So.* 2d 170, 172 (1967) (threat to shoot witness' guts out).

 Although concededly, defendant's threats were directed at a person whose identity was unknown and whose status as a witness was uncertain these distinctions do not diminish their probative value. They represent an inferential admission of guilt evidenced by the expressed desire of revenge against an informer and as such do not justify exclusion of the question and answer on grounds of relevance and materiality. We note in passing that no objection was made to the question.[6]

 The partial mistrial was not justified. The objection to the answer was not sound and should not have been sustained. At most the viable alternative of a precautionary instruction to the jury could have been given. Second, even if the witness' answer had been so prejudicial as to warrant the trial court's granting a mistrial, it should have been granted as to both counts where the subject matter of each arose out of the same episode and was so essentially intertwined. Under these circumstances, no manifest or imperious necessity existed which triggered the right of the trial court to grant a mistrial *sua sponte.*

 Furthermore, the defendant was prejudiced by the partial mistrial. Even though he was apparently willing to

---

[6]Failure to object to the question has often been held to preclude objection to the admitted testimony. *Beam v. Kent,* 3 *N. J.* 210, 216 (1949); *Willett v. Morse,* 71 *N. J. L.* 104 (Sup. Ct. 1904).

be subjected to the harassment of a second trial, he should not have been exposed to a second punishment for the same offense. The defendant's initial trial approach had been to concede possession in order to convince the jury of his veracity in testifying that he had no intention of selling the marihuana. By permitting the jury on the one hand to accept the concession on the possession count but preventing the defendant from utilizing that concession for his defense on the intent to distribute count, the defendant suffered the loss of a substantial trial advantage. The partial mistrial which avowedly was for the purpose of protecting the defendant had quite the opposite effect.

The partial mistrial having been improvidently granted and the defendant having been convicted of possession of marihuana, the second trial for possession of that marihuana with intent to distribute subjected him to double jeopardy in contravention of the Federal and State Constitutions.

The judgment of the Appellate Division is reversed; the conviction of possession with intent to distribute is set aside; and a judgment of acquittal is directed to be entered thereon. The initial judgment of conviction and sentence for possession from which no appeal had been taken are directed to be reinstated.

CONFORD, P. J. A. D., Temporarily Assigned (concurring). In the rather unique set of circumstances presented by this record, I find myself in agreement with the majority that the final disposition of the matter should be the reinstatement of defendant's conviction for possession of drugs and the vacation of that for possession with intent to distribute, together with a direction for dismissal of that charge with prejudice (or acquittal). But I cannot concur in the supporting reasoning of the court — that the partial mistrial at the first trial was "improvidently granted", thereby activating the double jeopardy protection of the defendant against another prosecution for possession with intent to dis-

tribute. I consider that the action of the trial judge was well within the range of his discretion under the attendant circumstances. Absolution of the defendant on one or the two charges is proper, but only on the basis of the theory that the evidence in the two trials, under principles either of merger or double jeopardy, encompasses guilt of only one of the two charges, not both. I shall subsequently herein indicate the ground for my conclusion that the ultimately surviving conviction should be that of possession rather than that of possession with intent.

In my judgment, the adduction before the jury of the testimony that the defendant had told a man he thought was a co-suspect on the drug charge that, "if he found out who the individual was that informed on him he would take his hunting knife and kill him", could reasonably have been deemed by the judge, on objection and motion for a mistrial by defendant, to have created such an aura of prejudice in the sense of bias and ill-will to the defendant on the part of the jury as to outweigh whatever probative weight the evidence might be thought to possess on the theory of consciousness of guilt. The situation presented was a classic one for application of *Evid.* R. 4(b) which permits the judge in his discretion to exclude evidence if he regards "its probative weight as substantially outweighed by the risk that its admission will * * * create substantial danger of undue prejudice". See *State v. Deatore and Mallon*, 70 *N. J.* 100, at 127 (1976) concurring opinion of Clifford, J. and Conford, P. J. A. D., temporarily assigned; *McCormick on Evidence* (2d ed. 1972) pp. 440–441; *State v. Hudson*, 38 *N. J.* 364, 370 (1962).[1]

---

[1]While most of the reported decisions have sustained convictions as against contentions of error in the admission of evidence of threats by the defendant asserted to be prejudicial, see majority opinion, in two cases such contentions have been sustained. *Cobb v. State*, 20 *Ala. App.* 3, 100 So. 463 (1924), *cert.* den. 211 *Ala.* 320, 100 *So.* 466; *State v. Marler*, 94 *Idaho* 803, 498 *P.* 2d 1276 (1972). But the point of present significance is that the majority

Nor can the trial judge properly be faulted for confining the grant of mistrial to the charge of possession with intent as against defendant's plea that the mistrial go to both charges. The question is not whether we appellate judges, from the vantage of hindsight, would, if we were the trial judge, have acceded to the defense motion. It is rather, in circumstances like these, whether, "where it clearly appears that a mistrial has been granted in the sole interest of the defendant", it must be held that "its necessary consequence is to bar all retrial". See *Gori v. United States,* 367 *U. S.* 364, 369, 81 *S. Ct.* 1523, 1527, 6 *L. Ed.* 2d 901 (1961). In my view that inquiry here calls for a negative response.

The trial judge felt that in view of the outright concession by defendant in his opening statement to the jury that he was guilty of the charge of simple possession the objectionable testimony could have no actual prejudicial effect in relation to a trial of that charge alone. It seems to me that this position was at least colorably correct in relation to an assessment of whether, in the context of the total fact-picture, a retrial of the defendant on the possession-with-intent charge after such a partial mistrial was violative of the double jeopardy criterion of affording "law and justice to * * * defendant and to the public." *State v. Farmer,* 48 *N. J.* 145, 171–172 (1966), *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967). See also the quotation by the majority of this court from Jus-

decisions are not holdings that the exercise of discretion by the trial judge the other way on admissibility would have been improper. There may have been countless rulings in favor of defendants on such questions not revealed in reports of appellate decisions since an appealing defendant in a criminal case would obviously not challenge a favorable ruling.

It may be further noted that in the general run of the majority cases, see Annot. 62 *A. L. R.* 136 (1929), the threat was during or in anticipation of trial and against a known prospective witness for the State. See also, *e. g., State v. Hill,* 47 *N. J.* 490 (1966). Probative weight is somewhat less in such a case as the present one when such elements are lacking.

tice Stewart's dissenting opinion in *United States v. Jorn*, 400 *U. S.* 470, 492, 91 *S. Ct.* 547, 27 *L. Ed.* 2d 543 (1971) (pp. 408–409).

It is of some apparent significance, under the cases, whether the mistrial was granted on the motion of the defendant rather than on motion of the prosecution or *sua sponte* by the court. As stated in *United States v. Jorn*, *supra* (400 *U. S.* at 485, 91 *S. Ct.* 547), and recently reiterated in *United States v. Dinitz*, —— *U. S.* ——, ——, 96 *S. Ct.* 1075, 1080, 47 *L. Ed.* 2d 267, 44 *U. S. L. W.* 4309, 4311 (1976):

> "If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop *not attributable to prosecutorial or judicial overreaching*, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." (emphasis added).

For purposes of application of the quoted rule I am satisfied that: (1) the instant circumstances were not "attributable to prosecutorial or judicial overreaching"; and (2) that the court's action may fairly be attributed to the defendant's motion even though that motion was granted only in part (*i. e.*, as to the charge of possession with intent). As the majority will concede, there was no prosecutorial "overreaching" here. The controversial testimony was colorably probative and thus admissible, aside from *Evidence Rule* 4 considerations. And what I have said above should absolve the action of the trial judge from any characterization of overreaching.

It remains to consider whether the partial mistrial can properly be regarded as attributable to defendant's motion. The majority asserts the grant of mistrial was "over the objection" of defendant. My scrutiny of the record con-

strains me to disagree. The objection of the defendant was only to the refusal to include the possession charge in the mistrial and to being required to proceed with the trial on that count. Nowhere did the defendant suggest that, in the posture of the court's ruling for continuation of the trial on that count, he objected to the mistrial of the charge for possession with intent, as such. He never articulated or implied a request that if the one charge must be tried, both should be at the same time. Indeed, at a later stage of the trial, counsel for defendant stated in the course of argument for a dismissal of the first count: "You have already declared a mistrial on that Second Count [possession with intent] and I wholeheartedly agree with what your Honor did".

In these circumstances I am not impressed by defendant's present assertion that it was important to him to have both charges tried at the same time for the tactical advantage of promoting his case of innocence on the intent charge by frank avowal of guilt on the possession charge. That consideration does not equate with or fortify a demonstration of double jeopardy on these facts.

Thus, the line of United States Supreme Court cases, in which *the defendant has not made the motion* for mistrial, stressing the necessity that, to preclude a claim of double jeopardy, the mistrial in the prior trial must have arisen from "a manifest necessity for the act, or the ends of public justice would otherwise be defeated", *United States v. Perez,* 22 *U. S.* (9 Wheat.) 579, (1824), is not here applicable. See also *Downum v. United States,* 372 *U. S.* 734, 736, 83 *S. Ct.* 1033, 10 *L. Ed.* 2d 100 (1963), suggesting a test of "imperious necessity"; *Illinois v. Somerville,* 410 *U. S.* 458, 93 *S. Ct.* 1066, 35 *L. Ed.* 2d 425 (1973). See Comment "Double Jeopardy and Reprosecution After Mistrial: Is the Manifest Necessity Test Manifestly Necessary?", 69 *N. W. U. L. Rev.* 887 (1975). The test here, where the defendant did make the motion, is, rather, as already noted and as stated in *Jorn* and *Dinitz,* both cited

above, whether the circumstances leading to the motion were "attributable to prosecutorial or judicial overreaching". For the reasons stated, I am clear that that criterion has not been established by defendant in this case.

Notwithstanding all the foregoing, the defendant should not stand adjudged guilty of both charges. It is impossible to segregate the marijuana upon which the jury may have rested its verdict of guilt in the first trial from that which could have led to the verdict of guilt of possession with intent to distribute in the second trial. In summation on the first case the prosecutor told the jury it was of no consequence whether they rested their determination on the quantum of drugs found on defendant when he returned to the room or that taken from the coat in the closet. Since it could have been the former, and since there is no reasonably tenable inference that such possession was of more than the "fleeting and shadowy" kind of possession purely incidental to the alleged intended sale, the evidence is not clearly consistent with a theory of discrete possession *per se* and possession with intent to distribute justifying conviction on both charges. See *State v. Wilkinson*, 126 *N. J. Super.* 553, 556 (App. Div.) certif. den. 63 *N. J.* 562 (1963); *State v. Booker*, 86 *N. J. Super.* 175, 178 (App. Div. 1965); *State v. Davis*, 68 *N. J.* 69, 83 (1975).

The difficult question is which conviction should survive. Does the case call for application of merger — the determination arrived at by the Appellate Division — on the theory that the matter should be looked at from the perspective of the initiation of the prosecution as a joint trial of both charges? If so viewed, the possession-with-intent conviction survives. *State v. Jamison*, 64 *N. J.* 363, 379–380 (1974). Or should the controlling factor be the circumstance that *in fact* a trial for possession with intent *followed* a conviction for simple possession? In that case, of course, double jeopardy bars the later conviction because of earlier conviction of a lesser included offense. *State v. Labato*, 7 *N. J.* 137 (1951). I would resolve the dilemma

in favor of the latter choice. The contretemps that developed here cannot be imputed to any trial dereliction of the defense. The motion for mistrial which precipitated the divided litigation was certainly warranted as a matter of defense. The defendant did in fact sustain the mental burden and stigma of a conviction of possession. That conviction was presumptively valid and subsisting. In that posture, the notion of a joint trial is fictional, and the subsequent prosecution of the more inclusive crime of possession with intent offended the double jeopardy rationale exemplified by *State v. Labato, supra.* I would therefore strike the conviction on that charge and permit the original conviction of simple possession to stand,[2] modifying the judgment of the Appellate Division accordingly.

Justice CLIFFORD joins in this opinion.

PASHMAN, J. (dissenting). This case concerns the propriety of a trial court order granting a mistrial on only one count of a two-count indictment. It also asks whether, after declaration of the mistrial, a subsequent retrial on that count is barred by the double jeopardy clause of the State and federal constitutions.[1]

---

[2]The State did not cross-petition for certification from so much of the Appellate Division's judgment as vacates the conviction and sentence on the possession charge. It would have been much the better practice had that course been pursued. However, in view of the result I reach, it would be anomalous to focus only on that part of the Appellate Division's determination which affirms the possession-wtih-intent-to-distribute charge and at the same time ignore that court's vacating of the possession conviction. The latter forms the factual and legal underpinning for reversal of the former and is inextricably intertwined therewith.

---

[1]The double jeopardy clause of the fifth amendment to the United States Constitution was deemed applicable to the states through the fourteenth amendment in *Benton v. Maryland,* 395 *U. S.* 784, 89 *S. Ct.* 2056, 23 *L. Ed.* 2d 707 (1969). The prohibition against multiple prosecutions for the same offense is also found in Article I, par. 11 of the New Jersey Constitution of 1947.

Defendant Richard L. Rechtschaffer was arrested for possession of more than 25 grams of marijuana. The Prosecutor of Morris County, acting upon information provided by two undercover agents, secured an indictment against Rechtschaffer on counts of possession of marijuana (*N. J. S. A.* 24:21–20 a(3)) and possession with intent to distribute (*N. J. S. A.* 24:21–19 a(1)).

During the course of the trial, John Dempsey, one of the undercover agents, testified as to his conversations with Rechtschaffer while they were in jail. Specifically, he stated that:

He [Rechtschaffer] advised [me] that if he found out who the individual was that informed on him he would take his hunting knife and kill him.

Defendant promptly moved for a mistrial *on both counts* because of the prejudicial effect of this statement. Though conceding the validity of defendant's arguments, the trial court ordered what in effect was a partial mistrial by declaring a mistrial on the possession with intent to distribute charge but continuing the trial on the lesser offense. In reaching this decision, the trial judge noted that defendant, through his attorney's opening remarks, had admitted his possession of the marijuana. Reasoning that the defendant could not be prejudiced as to a crime which he had already admitted, the judge concluded that the trial on the charge of simple possession would not be unduly affected by the inflammatory statement. Over objections by both defense counsel and the prosecutor, the trial was resumed and resulted in defendant's conviction.

Defendant thereafter moved for dismissal of the possession with intent to distribute count on double jeopardy grounds. The motion was denied and defendant was convicted of this offense at a subsequent trial.

On appeal, the Appellate Division affirmed the conviction for possession with intent to distribute but vacated the earlier

conviction for possession.[2] The court held that simple possession represented a lesser included offense of possession with intent to distribute and thus merged into the latter charge because both offenses were grounded upon the same evidence. While the State did not appeal from vacation of the earlier conviction, defendant filed a petition for certification which this Court granted. 68 *N. J.* 144 (1975).

The majority today acquits defendant of the charge of possession with intent to distribute but reinstates the conviction for simple possession. First, the majority reasons that the mistrial was improvidently granted by the trial court. It reaches this decision by characterizing the testimony of Agent Dempsey as being clearly relevant because it indicated "consciousness of guilt, or [was] inconsistent with innocence or tend[ed] to establish intent." Ante at 413. The Court further asserts that Dempsey's remarks, though hearsay, were admissible as a declaration against interest under *Evid. R.* 63(10). It then holds that while the conviction for simple possession may stand, the subsequent conviction for possession with intent to distribute is barred by principles of double jeopardy. Contrary to the majority, I would vacate both convictions and dismiss with prejudice.

The disposition I would recommend derives from my belief that it was a proper exercise of discretion for the trial court to grant a mistrial under the facts of this case. I nonetheless conclude that it was improper for the court to order a mistrial on only one of the two counts in the indictment. I am persuaded that because the prejudicial effect on one charge was equivalent to the prejudicial effect on the second charge, a mistrial should have been granted as to both counts. I would, therefore, vacate the tainted conviction which resulted from the first trial. I would also set aside the verdict of the second trial on the grounds that, because the *partial*

---

[2]Apparently, defendant did not appeal directly from the first conviction.

mistrial was improperly granted over defendant's objection, a retrial of that count is barred by the constitutional prohibition against double jeopardy. I will examine these two aspects of the case in order.

## I
### *Propriety of Granting a Partial Mistrial*

My initial difference with the majority stems from what I regard as its erroneous conclusion that the mistrial was improvidently granted. The majority seems to imply that simply because testimony is "relevant" and "probative," it must be admitted into evidence. Evidence Rule 4, however, permits a trial judge to exclude otherwise relevant evidence if its prejudicial effect outweighs its probative value:

> The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will . . . create substantial danger of undue prejudice or of confusing the issues or of misleading the jury.

This rule vests discretion in the trial judge for making such determinations. *McCormick, Evidence,* § 185 at 439–440 (1971).[3] I do not believe that the trial judge here abused his discretion in this regard.

Dempsey's testimony as to defendant's post-arrest comment was both inflammatory in its content and damaging in its implications. Moreover, it was completely unrelated to the substantive offenses with which defendant was charged and thus had only limited bearing on defendant's guilt. Contrary to the cases cited by the majority (ante at 414–415), this case does not involve a violent crime. Nor

---

[3]Although Evidence Rule 4 did not become effective until 1967, the principle which it embodies is reflected in New Jersey cases which preceded its adoption. *See Stoelting v. Hauck,* 32 *N. J.* 87 (1960) ; *Wimberly v. Paterson,* 75 *N. J. Super.* 584 (App. Div. 1962), certif. den. 38 *N. J.* 340 (1962) (bullet-ridden, blood-stained clothing withheld from jury because of prejudicial potential).

does it contain testimony of threats by a defendant against a specific witness who is expected to testify against him. As a result, the instant matter is clearly distinguishable from those cases which hold that damaging testimony similar to that of Agent Dempsey is admissible to demonstrate a "consciousness of guilt." In the context of the trial, it cannot be said that the trial judge erroneously concluded that the prejudicial effect of Dempsey's testimony substantially outweighed its probative value.

However, while I do not believe that the trial court abused its discretion in granting a mistrial on the charge of possession with intent to distribute, I find no rational basis for its failure to similarly grant a mistrial as to the remaining count. By declaring a mistrial in the first place, the court acknowledged that substantial prejudice might result from Dempsey's testimony. If it is conceded that this testimony could have compromised the jury's ability to reach a fair and dispassionate verdict as to one count, it seems illogical to argue that an intimately related charge, grounded upon the same evidence, would somehow remain immune from such prejudice. This is particularly so where the allegedly prejudicial testimony is equally unrelated to either of the criminal charges.

The judge's suggestion that a remark by defense counsel which conceded that Rechtschaffer did have possession of marijuana, somehow insulates the possessory offense from the damaging effects of the agent's testimony is untenable. A comment made by counsel during the course of his opening statement must never be treated as a plea of guilty. Despite limiting instructions to this effect, it is highly unlikely that a jury untrained in the law would be able to differentiate between evidence offered for different purposes and on different charges in the course of the same trial. *State v. Boone,* 66 *N. J.* 38, 48 (1974); *State v. Miller,* 67 *N. J.* 229, 240 (1975) (Pashman, J., dissenting). The jury will, and in this case probably did, consider the prejudicial and inflammatory testimony in reaching its decision.

In this respect, I find the impact of the contested testimony to be similar to the harmful "rubbing off" effect which I described in my dissent in *State v. Deatore,* 70 *N. J.* 100, 121, 358 *A.* 2d 163, 175 (1976) (Pashman, J., dissenting). There, I criticized the effect of impermissible cross-examination of a testifying defendant on his non-testifying accomplice. In the instant case, I find no real distinction between the prejudicial effect of the agent's testimony on jury deliberations on one possession charge and the identical effect which it might have on consideration of the other jointly-tried possession charge. Consequently, once the trial court had determined that a mistrial was warranted, it should have declared a mistrial as to both counts, not one. I, therefore, find that the conviction resulting from the first trial on the charge of simple possession was both tainted and unduly prejudicial, and I would therefore set it aside.[4]

---

[4]Incidentally, I note that there are several additional grounds on which the propriety of granting a *partial* mistrial might falter.

First, by requiring separate trials for each count of the indictment, the action of the trial court contravened an important State policy which provides that no defendant shall be subjected to separate trials for offenses arising out of the same criminal episode. *State v. Gregory,* 66 *N. J.* 510 (1975); *State v. Labato,* 7 *N. J.* 137 (1951). *See also* Section 2C:1–9(d) of the proposed *New Jersey Code of Criminal Justice,* now pending before the Legislature as Assembly Bill No. 3282 (1975), which provides that prosecution is barred when a former prosecution has been improperly terminated. As the majority itself concedes, "A mistrial of one count only which is inextricably intertwined with the second would frustrate that policy." Ante at 413.

Second, the declaration of a *partial* mistrial might very well have violated the doctrine of merger. In this regard, the majority states that under the circumstances of this case simple possession was "inseparable" from possession of the same marijuana with intent to distribute since both offenses were supported by the same evidence. Ante at 403. Therefore, defendant may be convicted and sentenced on only one of these two offenses. *Cf., State v. Best,* 70 *N. J.* 56, 356 A. 2d 385 (1976); *State v. Davis,* 68 *N. J.* 69, 77 (1975); *State v. Jamison,* 64 *N. J.* 363, 380 (1974); *State v. Fariello,* 133 *N. J. Super.* 114, 120 (App. Div. 1975), certif. den. 68 *N. J.* 164 (1975); *State v. Wilkinson,* 126 *N. J. Super.* 553,

In making these observations, I am of course cognizant that the power to declare a mistrial resides in the sound discretion of the trial judge. *Illinois v. Somerville,* 410 *U. S.* 458, 93 *S. Ct.* 1066, 35 *L. Ed.* 2d 425 (1973); *United States v. Jorn,* 400 *U. S.* 470, 91 *S. Ct.* 547, 27 *L. Ed.* 2d 543 (1971); *Gori v. United States,* 367 *U. S.* 364, 81 *S. Ct.* 1523, 6 *L. Ed.* 2d 901 (1961); *Brock v. North Carolina,* 344 *U. S.* 424, 73 *S. Ct.* 349, 97 *L. Ed.* 456 (1953); *State v. DiRienzo,* 53 *N. J.* 360, 383 (1969); *State v. Farmer,* 48 *N. J.* 145, 170 (1966) *cert.* den. 386 *U. S.* 991, 87 *S. Ct.* 1305, 18 *L. Ed.* 2d 335 (1967); *State v. O'Leary,* 25 *N. J.* 104, 116 (1957); *State v. Witte,* 13 *N. J.* 598, 611 (1953). This power should be reluctantly invoked and exercised, *State v. Locklear,* 16 *N. J.* 232, 239 (1954); *State v. Farmer, supra,* 48 *N. J.* at 171; but, when necessary, it should be employed in a manner consistent with a standard, whose classic definition is that of Justice Story in *United States v. Perez,* 22 *U. S.* (9 Wheat.) 579, 6 *L. Ed.* 165 (1824):

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, *there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* [22 *U. S.* (9 Wheat.) at 579, 6 *L. Ed.* at 165]

While this standard has been susceptible to a variety of restatements on both the federal and state levels, *Wade v. Hunter,* 336 *U. S.* 684, 69 *S. Ct.* 834, 93 *L. Ed.* 974 (1949) ("'imperious' or 'urgent necessity'"); *Downum v. United States,* 372 *U. S.* 734, 83 *S. Ct.* 1033, 10 *L. Ed.* 2d 100

556 (App. Div. 1973), certif. den. 63 *N. J.* 562 (1973). While the majority reaches this conclusion because the evidence indicates that defendant's possession may have been "fleeting and shadowy," (*State v. Davis, supra,* 68 *N. J.* at 84 n. 8; *see* opinion of Conford, P. J. A. D. t/a at 421), I would also find a merger of these offenses for the additional reasons set forth in my dissenting opinion in *State v. Ruiz,* 68 *N. J.* 54 (1975), the companion case to *State v. Davis, supra.*

(1963) ("imperious necessity"); *State v. Locklear, supra* ("absolute or an overriding necessity"), courts which have resorted to this procedural device have endeavored to protect the same basic interest. The role of the trial court in protecting this interest was outlined by this Court in *State v. Farmer, supra*:

> A wide range of discretion is recognized in the trial judge, who has his finger on the pulse of the proceedings. If in his judgment emergent conditions come into being which persuade him that the ends of justice for the defendant and the State cannot be achieved without aborting the trial, neither the Federal nor the State Constitution proscribes such an order. [48 *N. J.* at 171]

Thus, appellate courts have eschewed attempts to delineate or utilize mechanistic formulae by which to determine the circumstances which would warrant the declaration of a mistrial. *Illinois v. Somerville, supra,* 410 *U. S.* at 463, 93 *S. Ct.* at 1070, 35 *L. Ed.* 2d at 430.[5] This represents a judicial effort to accord sufficient leeway to the judgment of the trial court, whose assessment of the attendant circumstances at trial may be most sensitive to defendant's interests.

Within the context of the instant case, where the trial judge had already recognized the danger of undue prejudice with regard to one of the charges and where the potential for prejudice would clearly "rub off" on a second charge, the

---

[5] As this Court stated in *State v. Farmer, supra*:

> Obviously there can be no cataloguing of events or conduct which, without more, will require a holding of double jeopardy when a mistrial is ordered without defendant's consent. The circumstances must be examined with a mind conscious of the trial milieu and the fact that its atmosphere, vagaries, emotional stimuli and urgency of decision only rarely can be captured in a cold appellate record. They must be looked at also with an awareness that a person accused of crime has no natural constitutional right to be exempted from those procedural practices which are deemed necessary in the effort of the State to make sure that the conduct and final result of a trial shall be in accordance with law and justice to all defendants and to the public. [48 *N. J.* at 171–72]

failure of the judge to declare a mistrial as to both offenses was clearly error. Accordingly, I would set aside the conviction for simple possession and dismiss this charge with prejudice.

## II

### *Double Jeopardy as a Bar to Retrial*

The question remains whether a retrial of the possession with intent to distribute count is permissible after a mistrial was previously granted on that count. I submit that the recent United States Supreme Court decision in *United States v. Dinitz*, 424 *U. S.* 600, 96 *S. Ct.* 1075, 47 *L. Ed.* 2d 267 (1976), prohibits such a retrial.

In that case, defendant Dinitz was indicted for distribution and conspiracy to distribute LSD. During the course of the opening statements, chief counsel for defendant committed several indiscretions, which eventually caused the trial judge to expel him from the courtroom.[6] After removing this attorney from the case, the judge presented defendant with three options: (1) have the proceedings stayed, pending an application to the Court of Appeals to review the propriety of his action; (2) continue the trial with representation by the expelled attorney's (concededly ill-prepared) cocounsel or (3) have a mistrial declared to permit the defendant time to retain new counsel. After considering the options, defendant moved for a mistrial which was granted without objection by the prosecution. Before his second trial, though, the defendant moved that the charges be dismissed on the grounds that a retrial would violate principles of double

---

[6]Specifically, defense counsel refused to confine his opening statement to a summary of the facts and issues, and instead insisted on conveying his personal opinions. He also alleged that the State's principal witness sought to extort money from the defendant, even though there was no evidence connecting the prospective government witness with the extortion attempt.

jeopardy. The motion was denied and defendant was convicted of the original charges at a subsequent trial.

In rejecting defendant's double jeopardy claim, the United States Supreme Court relied heavily on the distinction between cases where a defendant requests a mistrial and cases where a court orders a mistrial on its own motion. Acknowledging that the declaration of a mistrial necessarily implicates a defendant's "valued right to have his trial completed by a particular tribunal" (424 *U. S.* at 606, 96 *S. Ct.* at 1079, 47 *L. Ed.* 2d at 273; see also *United States v. Jorn, supra,* 400 *U. S.* at 484–485, 91 *S. Ct.* at 556–557, 27 *L. Ed.* 2d at 556; *Downum v. United States, supra,* 372 *U. S.* at 736, 83 *S. Ct.* at 1034, 10 *L. Ed.* 2d at 102–103; *Wade v. Hunter, supra,* 336 *U. S.* at 689, 69 *S. Ct.* at 837, 93 *L. Ed.* at 978), the Court noted that ordinarily, a motion *by the defendant* for mistrial will not pose any barrier to reprosecution absent prosecutorial or judicial misconduct. *United States v. Dinitz, supra,* 424 *U. S.* at 606, 96 *S. Ct.* at 1079, 47 *L. Ed.* 2d at 273; *United States v. Jorn, supra,* 400 *U. S.* at 485, 91 *S. Ct.* at 557, 27 *L. Ed.* 2d at 556. On the other hand, it recognized that where a court declares a mistrial *sua sponte,* there can be a new trial only if the mistrial was properly granted on the ground of "manifest necessity." *United States v. Dinitz, supra,* 424 *U. S.* at 606, 96 *S. Ct.* at 1079, 47 *L. Ed.* 2d at 273; *Illinois v. Somerville, supra,* 410 *U. S.* at 461, 93 *S. Ct.* at 1069, 35 *L. Ed.* 2d at 429; *United States v. Jorn, supra,* 400 *U. S.* at 481, 91 *S. Ct.* at 555, 27 *L. Ed.* 2d at 554; *Gori v. United States, supra,* 367 *U. S.* at 368–369, 81 *S. Ct.* at 1526, 6 *L. Ed.* 2d at 904–905; *United States v. Perez, supra,* 22 *U. S.* (9 Wheat.) at 579, 6 *L. Ed.* at 165.

In the *Dinitz* case itself, the Fifth Circuit Court of Appeals found that the actions of the trial judge left the defendant "no choice but to move for or accept a mistrial" 492 *F.* 2d at 59. It therefore discounted his request for a mistrial and treated the case as though the trial judge had declared a mistrial *sua sponte.* Because it also found that there was no

"manifest necessity" which required the expulsion of defense counsel (since other disciplinary measures were available), the court concluded that the double jeopardy clause barred a second trial. *United States v. Dinitz,* 492 *F.* 2d 53 (5 Cir. 1974), aff'd, 504 *F.* 2d 854 (5 Cir. 1974). On appeal, the Supreme Court assumed *arguendo* that the mistrial had been improvidently granted, but reversed the Court of Appeals, because the Court determined that the defendant had in fact retained sufficient control of the conduct of the case to permit reprosecution. *United States v. Dinitz, supra,* 424 *U. S.* at 607, 96 *S. Ct.* at 1080, 47 *L. Ed.* 2d at 275. In explaining its decision, the Court stated:

> Different considerations obtain, however, when the mistrial has been declared at the defendant's request. The reasons for the distinction were discussed in the plurality opinion in the *Jorn* case:
>
>> If the right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See *United States v. Perez,* 9 Wheat., at 580. 400 U. S., at 485, 91 *S. Ct.* 547 (footnote omitted).
>
> The distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause. Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire "to go to the first jury and, perhaps, end the dispute then and there with an acquittal." *United States v. Jorn, supra,* at 484, 91 *S. Ct.* 547. [424 *U. S.* at 607, 96 *S. Ct.* at 1080, 47 *L. Ed.* 2d at 273–274; footnote omitted]

For these reasons, the Court concluded that:

. . . . The *important consideration*, for purposes of the Double Jeopardy Clause, is that the defendant retains *primary control* over the course to be followed in the event of such error. [424 *U. S.* at 608, 96 *S. Ct.* at 1081, 47 *L. Ed.* 2d at 275; footnote omitted; emphasis supplied]

I have no doubt that had the trial court in this case granted defendant's motion for a mistrial *as to both counts* of the indictment, there would have been no bar to reprosecution. However, the judge did not do so. In contrast to the circumstances presented in *Dinitz,* here defendant retained no control over the course of events. In fact, when it appeared that the trial judge had decided to grant a mistrial on one count, but not on the other, counsel for the defendant objected. Because defendant objected only to a *partial mistrial,* it is probable that given the opportunity, he might have preferred to "go to the first jury" rather than suffer the "anxiety, expense, and delay occasioned by multiple prosecutions." *See United States v. Dinitz, supra,* 424 *U. S.* at 608, 96 *S. Ct.* at 1081, 47 *L. Ed.* 2d at 275. However, this opportunity was never afforded and defense counsel *was directed* by the court to "go ahead." The defendant never sought a partial mistrial; consequently, such action was clearly taken by the trial court *sua sponte.* (*See* ante at 366 n. 1, 371). As noted above, I am convinced that under the circumstances of this case, a *partial* mistrial was an improper resolution of the matter. It follows that because the mistrial was declared on motion by the court, the guarantee against double jeopardy prohibits reprosecution of defendant on the possession with intent to distribute count.

For the foregoing reasons, I would set aside the conviction for possession with intent to distribute and further dismiss both counts of this indictment with prejudice.

CONFORD, P. J. A. D., and CLIFFORD, J., concurring in the result.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER and Judge CONFORD—6.

*Dissenting*—Justice PASHMAN—1.