146 N.J. Super. 573 (1977)
370 A.2d 490
STATE OF NEW JERSEY, IN THE INTEREST OF C.V., JUVENILE-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1976.
Decided January 18, 1977.
*574 Before Judges HALPERN, BOTTER and KOLOVSKY.
Ms. Andrea R. Grundfest, Assistant Prosecutor, argued the cause for appellant State of New Jersey (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Ms. Sara A. Friedman, Assistant Prosecutor, of counsel and on the brief).
*575 Mr. Paul M. Klein, Assistant Deputy Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney).
PER CURIAM.
The State appeals from the dismissal of a complaint against a 14-year-old juvenile charging him with an act of delinquency in committing an atrocious assault and battery upon a woman. The case was dismissed because a hearing had previously been commenced by another judge and some testimony had been taken before the judge determined that the case was sufficiently serious to warrant representation of the juvenile by counsel. The judge had therefore declared a mistrial and transferred the case to another judge. When it again came on for hearing the trial judge granted defense counsel's motion to dismiss for violation of R. 5:9-1(c), since the rule by its terms permits suspension of the proceedings only "prior to the taking of testimony" if the judge determines that the case may result in institutional commitment of the juvenile.
On this appeal the issues are whether dismissal of the complaint was compelled by the rules of court or by reason of the juvenile's claim of double jeopardy, raised now as an additional bar to his prosecution.
The first hearing was commenced without the prosecutor or counsel for defendant present. The charge was read and the juvenile was asked if he understood the charge and if it was true. He admitted striking the victim with a stick (the charge alleged that a two-by-four was used), but he said he was acting in defense of his cousin. At this point the judge announced, "I will not accept the plea of guilty," and declared that the case would be tried.
The victim was then called to testify. She described defendant's attack upon her and denied provoking the attack or having any weapon in her hand. At that point the judge asked defendant and his mother if they had any questions to ask the witness (cross-examination) and they had none.
*576 Before a second witness was called the judge advised defendant and his mother that there were "serious problems" involved and "the boy should have an attorney." Since they could not afford an attorney they would have to apply for representation by the Public Defender. The judge stated that the seriousness of the charges and the defense requires investigation before the matter is tried to conclusion. He declared a mistrial on his own motion, and transferred the case to "the calendar requiring an attorney, to be heard by another Judge."
The judge repeated that he would not accept a plea of guilty "in all fairness" to the juvenile because of the defense asserted. He concluded that "justice" requires that the juvenile have an attorney who can cross-examine and that the prosecution should present the case. He added, "I don't know how in my opinion I went along with this but as more unraveled I came to the conclusion that [it] belongs on that kind of calendar because it's extremely serious."
A juvenile who is adjudged delinquent is subject to various dispositions. N.J.S.A. 2A:4-61. The proceedings may be continued without formal disposition for a period of not more than 12 months and then dismissed if the juvenile makes a satisfactory adjustment. Other dispositions include leaving the juvenile under the supervision of his parents, placing him on probation or under the care of the Division of Youth and Family Services, or committing him to a correctional institution.
R. 5:9-1(c) contemplates that an evaluation be made of the potential for institutional commitment before any testimony is taken so that counsel may be provided in accordance with R. 5:3-3(a). This should be the norm. The rule was revised to exclude the former provision that a transfer could be made to the "formal calendar" at any stage of the proceeding. Cf. Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).
However, the case before us turns essentially on the authority of a judge to order a mistrial on his own motion *577 for "manifest necessity" to meet the "ends of public justice." See United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824); Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); State v. Rechtschaffer, 70 N.J. 395 (1976). Here the trial judge could have completed the hearing, but the adjudication of delinquency and disposition were subject to reversal for the failure to advise defendant of his right to counsel and obtain a waiver of that right. See R. 5:3-3(a); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). There is no showing here of prosecutorial or judicial misconduct or bad faith. In these circumstances we conclude that the trial judge did not abuse his discretion in declaring a mistrial and transferring the case to another judge, and double jeopardy does not bar a new trial in the juvenile court. Cf. Illinois v. Somerville, supra; United Stats v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); State v. Farmer, 48 N.J. 145 (1966). By reason of the absence of counsel or a knowing waiver of the right to counsel, nothing that defendant said in the first proceeding should be admitted against him in later proceedings.
Reversed and remanded.